Good morning. May it please the Court, Justice Gibson, in absentia, but here via phone. My name is Jeffrey Dickerson. I'm from Reno, Nevada. I represent the appellant in this case, Mr. Bankston, who is a federal employee who was dismissed from federal service, after which he filed an appeal with the MSPB. He also alleged that age discrimination was involved with his termination and therefore became a mixed case with the MSPB. Prior to the administrative hearing with the ALJ, he withdrew his or requested withdrawal of his MSPB, doing that directly to the ALJ, who in turn granted that request, withdrew, allowed the withdrawal and canceled the hearing, whereupon Mr. Bankston proceeded to file in a timely fashion, in other words, within 90 days, in federal district court in Reno, Nevada. What ensued was a motion to dismiss initially on that case, which we'll call Bankston 1, in which they moved to dismiss based upon a failure to exhaust grounds. That culminated in a colloquy between counsel and the Court, whereupon Judge McKibben ordered us to have 90 days in which to attempt to reopen that matter and then come back to him if, advise him if we had been able to reopen it. If we couldn't reopen it, then he'd address the issue that was presented at that point in time. We attempted to reopen it. The MSPB would not allow us to reopen it, so we did come back to Judge McKibben, and the issue was again presented. The procedural posture within which it was presented happened to be a renewed action, because he dismissed the previous action without prejudice to bring a second action, and there was no issue regarding limitations periods due to that order. The district court considered the new briefing, did not have, I don't believe, subsequent arguments. I'm sure that the district court considered the transcript because it ordered the transcript on the previous hearing and then made a decision, and the decision was not based upon, nor did it address, the question that was left open in Stevens versus the Department of Treasury, and that question is whether or not, under the ADEA, a federal employee is required to exhaust his administrative remedies. Our position in this appeal and down below was that, as Justice Stevens in his concurring opinion indicated, that there was no exhaustion requirement in the ADEA, and therefore, a fortiori, you could not have an abandonment argument to apply as a prudential consideration by the courts, grafting something into the legislation that wasn't there. Administratively, you may have regulations under these cases that address this issue, and under the regulation that was addressed below by Judge McKibben, which is 29 CFR 1614, that's a regulation. And Judge McKibben solely addressed the regulation. He did not address whether or not the ADEA, the statute that Congress created this remedy under, addressed whether or not a final agency decision was necessary in order to proceed to federal court. And as indicated in Justice Stevens' concurring opinion in Stevens versus the Department of Treasury, what, as he saw it, what the courts that have gone this way, the Third Circuit, the First Circuit in Castro, I believe the Third Circuit in Petrel, these other cases that have been cited in the briefs and in the decision below, have grafted upon this statutory scheme an analogy, or by analogy, a requirement similar to that in Title VII, where there is none that exists. And the only circuit out there that really has candidly addressed this issue, I think, is the Sixth Circuit in Lankford. And they looked at it, and they said there is nothing there to require a final agency decision under the ADEA. Does it make a difference if the action is still pending at the time that the civil action is brought? That issue isn't here, thank goodness, because in the back decision, which they argue is not applicable anymore, but there is a part in that back decision at the very last paragraph, they say that the primary purpose of the exhaustion requirement is to prevent simultaneous proceedings. And I would imagine that if that issue were presented to you, you would have some serious prudential concerns because you're double-tracking it. And in that instance, it's not here, though. Fortunately for this Court, it doesn't have to address that issue. That would raise some serious concerns prudentially. In this case you have to see under the under there was, as I recall, there was in the earlier pre- I forget the date it was amended. But it was amended so that if the petitioner filed or the claimant filed a civil action, that automatically terminated the pending proceeding? Right. And in this particular case, for instance, in the Vinnie Atheros case, which is a Ninth Circuit case where they applied the abandonment doctrine, and that case doesn't apply here. I mean, in that case, you've got that guy going every which way but loose, Your Honor. And he files an MSPB, then he files an EEOC, and he does several other things before he finally gets to Federal court. But in that case, what happened was he filed with the MSPB and then filed with the EEOC. And you can't have both. And so that's another situation where you would have some serious prudential considerations at play where you've got a complaining party, a charging party attempting to dual-track things and get two bites at the apple, essentially. We didn't get two bites at the apple here. We decided when I got involved with the case, and I don't know if this is in the record, but just so you know, I became involved and I did not want to go to that hearing. I did not want this adjudicated by the administrative law judge. And I advised the client that we could get out of this. I reviewed the case law with respect to this. And I knew this issue was going to come up. I was almost certain it was going to come up. And here we are today addressing it. We're not addressing it because I'm concerned about my potential problem in advising the client to drop that. We're addressing this because it's an important issue. And the question, I think, really comes down to can this court look, as the court below did, look at a regulation that the EEOC has promulgated that says here are the three avenues you have to go. And you can't go to federal court until 180 days expires in the EEOC process or 120 days expires with the MSPB process. And then you can treat that as a final agency decision. And only then can you go to federal court where the Congress has not imposed any such limitation. Where Congress has imposed such a limitation, the courts have been correct in coming down and applying as a prudential consideration the requirement that if you undertake to exhaust your administrative remedies and abandon them, you're stuck. But in this situation, you don't have that. And therefore, by imposing that prudential consideration in this case under these facts, this court is grafting a prudential requirement or limitation where Congress has not even spoke or spoke in. And I think that would be inappropriate for this court to undertake that type of judicial legislating where Congress has been silent. And we know that where Congress has wanted to speak about the issue, it has done so. It has done so very clearly under 2000E16, Title VII, requiring exhaustion, requiring a final agency decision to be made before you proceed to federal court. It has not done so in the ADEA and certainly not with respect to federal employees. You say that Judge McKibben relied on regulation. What does the regulation say about that? Well, as I recall the regulation, it's somewhat detailed. But it says that you can, as a federal employee. Well, on this particular issue, we don't have to get into all this detail. Oh, okay. On this particular issue? Yeah. Well, Judge McKibben canvassed it in a long paragraph as to what the different options were. What he did here, which is basically took the third option to the MSPB. And under the MSPB category, you've got 120 days to deal with the issue, after which you can treat it as a final agency decision. Here on the 62nd day, we withdrew. Okay? So we didn't exhaust the 120. But I think it's curious if you look at, I believe, footnote 11. I saw this this morning and thought it was curious that in Vinny Atro's case at footnote 11, they discussed the 120-day MSPB requirement because, remember, in that case, he had gone to the MSPB. And in the footnote, the Court notes that the 120-day limitation is a fire under the agency's rear, if you will, and not any kind of effect upon a final agency decision. As I understand that footnote, what they're saying is, unlike the 180-day requirement the EEOC has imposed, after which you can treat it as a final agency decision, the Vinny Atro's case is saying that's not what that is. It says 120 days does not make a final agency decision. Okay? So that's another distinction, and I haven't thought through how to, if it's even necessary, to try to figure that out because, again, Congress has not required a final agency decision. Whether or not the 120 is a final agency decision or not is beside the point in this case. We did undertake in a timely fashion to trigger the procedures that were in place, as Congress has required. We timely filed the action after concluding the administrative proceeding, and to say that we abandoned that proceeding and therefore didn't exhaust leaves this person without a remedy, and that's unfair, and it's not what Congress intended. Thank you, Your Honors. Okay. Judge Gibson, any questions? No questions. All right. Good morning, Your Honors. Good morning. My name is Greg Addington. I'm an assistant United States attorney for the District of Nevada in Reno. It would be very tempting to read the Supreme Court decision in Stevens and this Court's decision in Back and conclude that an age discrimination complainant need not proceed through any previously initiated administrative process before filing suit in district court. I would submit that that is superficially appealing, but it would be erroneous. There are two separate parallel statutory and regulatory schemes available for an age discrimination complainant. One is under Title 29 and implementing regulations in 29 CFR, specifically 29 CFR 1614.201 and following. And on the other hand, there is another track under Title 5. The Title 29 process is described as the EEO process. Another process is the MSPB process under Title 5, specifically Section 7702, and its implementing regulations found at 5 CFR, specifically 1201.151 and following. The district court properly recognized that this is Mr. Bankston initiated a mixed case under Title 5, Section 7702, and its implementing regulations. Neither Stevens nor Back have anything to do with this case because the complainants in those two cases initiated EEO processes by filing a EEO complaint with their respective agencies. Those are not mixed case cases. Those are not MSPB cases. They are separate and distinct regulations with separate and distinct requirements. And this Court in Back made it very clear in footnote 1 at page 244 of that decision that it had nothing to do with anything other than EEO regulations, namely the Title 29 regulations. In footnote 1, it states, quote, we emphasize that our holding is limited to age discrimination claims governed by EEOC regulations. And then there's a case citation following. This case, the Bankston case, is not governed by the EEOC regulations. Back recognized, just as the Seventh Circuit in Adler had previously recognized, that the EEOC regulations included a provision which Your Honor Judge Hugg mentioned, namely 29 CFR 1614.409, that filing suit in the EEOC context terminates the commission's processing of the appeal. And I say commission processing of the appeal because that's what that regulation says. It only affects what the EEOC does because it would only be an EEOC matter that was pending in connection with those regulations. Well, so the EEOC regimen is that, and that Back was dealing with, now provides that if, let's see, to the result of regulation 1613.513, in effect at the time Back filed this complaint, is to terminate any unexhausted administrative proceeding when a claimant files a civil suit. Similarly, an exhaustion requirement would terminate any civil suit filed. Thus, the joint effect of the amended regulations and exhaustion would be to leave the claimant without any avenue of relief. That is correct. Okay. So in the EEOC process, if the claimant terminates or filed, rather, if the claimant files a parallel civil action, doesn't that terminate by the claimant's act? Yes. Okay. So in this case, the claimant effectively did just that. The claimant withdrew his claim before the MSPB. He did. Now, where is it writ that the claimant, having started down the MSPB road, must finish it to conclusion when the MSPB, in fact, granted his request to dismiss? Yes. First of all, we must note that under the Title V regime and the V CFR regime, pertinent to mixed cases, there is no counterpart to the regulation in the EEOC. But there's also no exhaustion requirement as a counterpart to Title VII, is there? Yes, indeed there is. Under Title V, 7702. Title VII has a statutory exhaustion requirement, doesn't it? Title VII has the statutory exhaustion requirement built into it. Yes, sir. Is there one for MSPB, Title V? Yes. Title V. Congress specified exhaustion of remedies. Yes, Your Honor. Okay. And I would note Title V of 7702 begins with one of my very favorite introductory phrases, notwithstanding any other provision of law, and then it goes on to state that a mixed case complainant who files a petition with the MSPB is before that board and the board, quote, must decide that appeal within 120 days, or must decide. What does that say about exhaustion of remedies, though? Does that parallel the language in Title VII? Well, it does. That's what you're reading into it, and that's what Judge McKibben understood it to be saying. But that doesn't say anything about the petitioner having brought it must exhaust that. It just says that's a timeframe in which MSPB must act. Yes. And it's sort of like the California Supreme Court has to get its decisions out 60 days in submission or they don't get paid. But that doesn't mean ñ I mean, that's what you're reading into it, though, that that's a congressional exhaustion requirement. That that is the congressional exhaustion requirement. That's correct. The board must decide the appeal that is presented to the board. And if they don't? And if they don't do it within 120 days, what? Then the implementing regulations under the V CFR state that if the board does not decide within 120 days, the mixed case complainant may proceed to district court. Well, that's what I say. That's a time limit on ñ that's a statute of limitations or decisional limitations on MSPB, isn't it? How does that say anything about that the petitioner must, having brought it, bring it, allow the MSPB to make the decision? Because the board is directed to decide the case that's before it. Within a time limit. Within a time limit. Right. And if the board does not decide, then the complainant has the choice to proceed to district court. And that is precisely the analysis which this Court followed in Vineratos, which, of course, was not an age discrimination case, but was a case that evaluated the MSPB regulations under V CFR. Again, a post-Stevens case. And the Vineratos case cited as approval other circuit decisions that were age discrimination cases, that were also mixed case cases. The third ñ the Third Circuit in Pertil and the Seventh Circuit in McGinty, again, pre-Stevens cases, which may be implicated by the Stevens decision. But following Stevens, the Second Circuit in Ikanamu ñ I'm hoping I'm pronouncing that right ñ had before it a mixed case under the Age Discrimination Employment Act. So it's precisely this type of case. And held that the complainant there was not subject to the MSPB. And then that withdrew that. And it was in Ikanamu at footnote 8 that, because, quote, because, in the arena before pursuing the Eighth Circuit in McAdams, 1990, and page 1142 of the McAdams Circuit, McAdams had chosen that choir to exhaust her claim. And continuing, McAdams abandoned her. And she had both an ADA elimination claim as well as a mixed case. So the analysis of McAdams in the Eighth Circuit in You read, this is at the excerpts of record page conclusion is titled but the BPC Uh Mr. Letty's declaration the Board of Prison Terms Commission Sure Experience at the board and what he observed the board It's well set out there if there's any doubt Where he says In no way did they prove that I was unreasonable risk to the public safety Again at page 7 the board is going out of its way to make a decision making To make its decision making method vague I assert that it does the statutory language is that you will be that you are suitable unless you pose an unreasonable risk of danger The language in there is that you've got an expectation of parole and that it's on the board's burden to find And it's a it's a it's a low threshold is still an agency decision is just some reliable evidence To show that you pose an unreasonable risk of danger to the public if you're released So I don't think the board can come into the hearing Entitled to parole unless the parole board Proves certain things Unless the parole board Find sufficient evidence proves that you pose an unreasonable risk of danger to the public That's what California law requires That's what the regulations that implemented say they set out a suitability determination characteristics that they're looking at So they give them some framework that they work through And I think that the the structure is set up that They're entitled to parole unless The board finds evidence of unsuitability because they're a public danger It's an unreasonable risk of danger to the public At what point? The first year after he's sentenced? No, they've got a whole separate structure within the regulations in the statute of when one has an initial suitability hearing I believe when Mr. Biggs was convicted that it was two-thirds of the minimum term of 25 years plus whatever Given whatever custody credits I think in his case it was about He was sentenced at 25 to life and this was 15 years along the way wasn't it? I think it was 15 years along the way and then you also have to keep in mind that this If one is found suitable as McQuillian case is a prime example He was found suitable parole in 79 I think from a early 70s conviction So it was an even shorter time frame between when the conviction when he got to CDC and when he was found suitable But his release date was decades later So the separate question of applying the matrix and assessing when he should be released is a separate problem So the concern that you might be go to prison for a life term be found suitable a year later And released three weeks later is nowhere in the cards in this case It's not something you even have to be concerned with The problem What he's asking for is a fixed date He's asking for at this point he's not even asking for the fixed date in reality I mean the limitation of the petition is that he's asking for a fair hearing by a fair board The fair hearing portion was discussed by the district court Let me be sure now because we've moved from you know originally the argument was an attack on some evidence Now I ask you okay why isn't there some evidence you're saying well The thing you'd like to really address is why you didn't Why the district court didn't go into this Flap about Governor Davis's alleged Per se policy in the Rosencrantz case and so on and so forth So what is it that you wanted to you say he didn't get a fair hearing But you haven't addressed why there isn't some evidence So you're just saying we should the district court should have determined that this was a bogus hearing No matter if they said the right kinds of things to satisfy some evidence We should the court should look behind it and say well this is they're just doing lip service If the district court had found that it was a performer hearing that was a lip service Then his due process rights would have been violated So the answer is yes So you're saying if we if we if there was no evidence that they were just doing lip service That what they did say would meet the some evidence test I'm not conceding that there is some evidence And the problem that I have intellectually analyzing it is between There are two separate problems with going straight to the some evidence standard And ignoring everything else that that we raised in the brief One is that the district court didn't have the transcript of the parole hearing So I think you really have to look at the parole hearing transcript Not just the decisional portion that they had to assess the some evidence And that we put in the brief and I don't really have anything to add to it I think that a number of the standards as the district court found And even others that it found some evidence for Don't really have some evidence when you look at what was actually said during the hearing For example there was some questions about his sincerity or his I just blanked it out Those I don't have anything I'm not really addressing Because I don't have anything to add to what I put in the briefs The other aspect that I think is problematic Is that I don't think the district court can make an accurate some evidence assessment Without calculating into it what evidence there is that the board was biased When it was discussing the evidence So your suggestion is that based on these statements of Mr. Biggs pro se On page 20 of his petition That the district court should have engaged in an examination Of Governor Davis' parole policy basically Isn't that what that boils down to? It has to address that issue and what effect that might have had on the board I'm not relying solely on page 20 But it again shows up in his answer it again shows up in his objection So I think the court had notice of it and it just failed to address that issue I'd like to reserve the remainder of my time for You may Thank you Thank you Good morning Good morning May it please the court I'm Deputy Attorney General Jessica Boulogne And appearing for appellees I'm going to jump ahead a little bit Right to the question of whether or not there was some evidence Because counsel is just addressing it And I think it's important for the court to look at the penal code Section 3041B Where it specifically states that The gravity of the conviction offense The timing or gravity of the conviction offense Should be considered to determine whether or not Public safety requires a more lengthy period of incarceration I think the board did consider that And found that because of the conviction offense A more lengthy term of incarceration was warranted I believe the district court did the same thing And implicit in that finding There's a showing that there is some evidence to deny parole Which also is a showing that the decision was not based on bias Because there's some evidence to support the decision It's clear that the decision was not made due to a bias of the board Just help me understand how this parole process works When they have the first He said a second hearing I guess as well in the interval But we're looking at the first hearing I gather Correct So when he comes up What is it that the statute commands? That there be a parole date unless the board finds The specific language is The panel or board shall set a release date Unless it determines that the gravity of the current convicted offense Or offenses I understand, okay So I'm just trying to get So what the prisoner coming into a parole hearing is looking for Is a release date And it may be a number of years in the future But it's a target date against which he's now Been judged to merit likely The parole can always be revoked for cause I gather Correct As it was in McQuillian actually Correct And it's actually two separate decisions One, whether or not the inmate's suitable for parole Where there's a number of factors that are considered That are laid out in the California Code of Regulations And in the penal code And then the second decision If they are found suitable What is the appropriate term? All right, so in this case it was suitability Correct And because of the nature of the offense They decided he wasn't suitable enough to set a release date There were a number of decisions The nature of the offense was the primary reason There were also Mr. Biggs' failure to profit From previous terms of probation and parole He continued his criminality There was also issues of whether or not further therapy was required Was that all, that probation That was pre-incarceration for this offense, right? Pre-incarceration for this offense, correct So after 15 years as essentially a model prisoner That's what they were saying That they were going back to the nature of the offense And what he did during that period when he was 17 and 18 That was the primary reason, correct Has the California Supreme Court addressed Governor Davis' policy? Didn't the Rosencrantz case? It did, the Rosencrantz case was directly on point And the evidence that Mr. Biggs submitted with his petition Was considered by the court in addition to other evidence And the Supreme Court found that there was not a blanket parole policy That the board and the governor did examine each case And consider all the factors They gave them each individual consideration Which is what was required under the California regulations Didn't they also find that there was liberty interest? They actually did not address the federal due process standard They did, though, hold that there was a right to have some procedures And that some evidence was required, that's correct So is the state still arguing in this case That we should say there isn't a liberty interest? Under federal law, we would argue that Sandin should apply And that given Sandin, you should look for an atypical and significant hardship And that a life prisoner who goes to a hearing and doesn't receive a date Stays in the same position he was as before having the date And understand that that would not require a due process right You don't think McQuillian forecloses that? McQuillian, I think it's factually different Because Mr. McQuillian had a parole date that was rescinded What's the substantive difference between the two? It said, didn't it read, Sandin is being limited to disciplinary cases? It did, your honor, it did And under Green-Holtz, I don't think there is a question that a due process right applies So should the court apply Green-Holtz? I think that would resolve the issue in line with McQuillian All right Just turning to the conviction offense and the board's sum evidence finding The board found that in the commitment offense there was a callous disregard for human suffering And also that the commitment offense was carried out in a dispassionate and calculated manner Here Mr. Biggs plotted the murder with his co-conspirators He agreed to transport the murderer to the scene of the crime, which he did He actually switched out his car so he wouldn't be recognized He then watched as the victim was bludgeoned and stabbed to death And then he met his crime partners after the crime where there was an exchange of money The whole purpose of the murder was to prevent the murder victim from testifying in a crime And the board properly considered all these factors and weighed them And decided that they presented the sum evidence, the primary reason to deny Mr. Biggs parole Unless you have any other questions Judge Gibson? I have no questions Okay, thank you very much I just have a few responses I think you've addressed properly that she has conceded that Sandin doesn't apply given McQuillian's holding As far as the last comment she made about the facts I'd only correct that there is no evidence and the board did not find that Mr. Biggs actually watched the murder He did aid, he didn't stop it He did actually bring the person who committed the murder back to more carefully dispose of the body So he fully admitted to those participations, but he didn't watch I'm not hearing you I'm sorry, I'm sorry I just wanted to clarify a factual assertion she just made about Mr. Biggs having watched the victim being bludgeoned That did not happen, Mr. Biggs was there And he admitted and the board found that he participated as far as transporting the killer And even worse in my mind, took the killer back so that the killer could redispose of the body once they found out he'd just been dumped But he didn't watch the murder, if that makes any difference The Attorney General's argument regarding But it's clear that he participated in the whole thing Right There's no dispute about it, it's just if that particular factual assertion makes a difference, it's not right Do you think it does? No, but I don't want to leave it dangling there My only other significant point is, I believe I wrote this down, that she's arguing that You can't prove bias by the board if there exists some evidence to support the decision That just logically doesn't make any sense You can have a biased decision maker that would undermine someone's due process rights And still have some pieces of evidence that would support it That doesn't mean the process You mean biased judges can always salt the record? I mean, I could be in ALJ and somewhere saying I hate black people And piecemeal decisions so that I can do that So who was biased? His allegation is that the panel was biased The whole panel? Yes And what is the evidence of that? The evidence he presented in his petition was the Letty Declaration Asserting what Mr. Letty, from his experience at the board, as a chairman and as a board member The same people? The Letty Declaration basically says that the governor's policy has had a systemic effect In causing the commissioners not to follow the statutory requirements So it's a systemic bias, that the system has collapsed Is bias of anyone that serves on the parole board because the governor has a policy? Yes, the governor's policy has affected in bias their decision making This is the governor who announced that the legislature's duty was to follow his, enact his vision I think when he first took office The same one, in 99 I believe the governor was, I forgot to write my chronology I think Pete Wilson was still governor, but the policy has continued I acknowledge, because you're smiling at me a little bit, that this is a difficult thing for him to prove But that's not my point at this point I think it's an issue that needs to be addressed I think we understand what the issue is Thank you, Your Honor Thank you The case that's argued will be submitted Next case is Lopez-Urrenda v. Ashcroft Good morning, Your Honor Good morning Mark Vanderhoof Why don't you let the folks clear out behind you It's a little cramped here Yes Okay Thank you for Good morning Mark Vanderhoof along with Stephanie Goldsboro from our office Please talk into the mic Sorry On behalf of Mr. Lopez-Urrenda who is in court here today The issue in this case is whether the elimination of suspension of deportation contained in the 96-IRA-IRA enactment can be applied vector actively to Petitioner given the unique facts of his particular case Petitioner applied for asylum on September the 6th, 1996 before IRA and the elimination of suspension and deportation were passed by Congress And you're mindful, now you're trying to steer us around Vasquez Zavala Correct, Your Honor. It's very distinguishable and I'll explain why Okay
judges: Hug, Gibson, Fisher